UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION



FILED
MAR 20 2007

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| LARSON MANUFACTURING COMPANY OF SOUTH DAKOTA, INC., a South Dakota corporation, | * * * * | CIV 04-4120 |
| Plaintiff, | * * | |
| -vs- | * * | MEMORANDUM OPINION AND ORDER |
| ANDERSEN CORPORATION, a Minnesota corporation; and EMCO ENTERPRISES, INC., a Minnesota corporation, | * * * * * | |
| Defendants. | * * | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The Court held a joint *Markman*[1] hearing with the case of *Larson Mfg Co. of South Dakota, Inc. v. AluminArt Prod. Ltd.*, CIV 03-4244 (D.S.D.) on March 9, 2007. Set forth below are the Court's findings regarding the parties' requests for claim construction in this action.

Plaintiff contends Defendants are infringing on a patent Plaintiff was issued on September 16, 2003, United States Patent No. 6,618,998 ("the '998 Patent"). The '998 Patent relates to an exterior multi-season door with a variable length screen. The door has a spring-loaded roll of screen attached to a moveable insert or sash, such as a glass window pane, which allows the user to easily increase or decrease the amount of ventilation. This type of door allows the user to increase ventilation by moving the glass window pane down to withdraw screen material from its retracted position and cover the area where the glass insert was moved from. To decrease ventilation, the user moves the glass window pane upwards, which will allow the screen to retract. One of the benefits of this type of door is ease of use, in that the user is not required to remove the glass insert to replace with a screen insert depending upon the season. Thus, storage of the inserts is not required. Another

---

[1]*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir. 1995).

benefit of this type of door is that when the user desires to have the glass window pane covering the entire opening, the user is not required to look through a screen and the glass at the same time to see through the door.

This case was before the Court for a *Markman* hearing in 2004. During that hearing, however, the Defendants in the *Larson v. AluminArt* case informed the Court that they would be seeking a stay in that action due to a reexamination by the Patent and Trademark Office of the '998 Patent. The *AluminArt* case was stayed on October 4, 2004, and this action was stayed on September 29, 2005, pending the reexamination proceedings before the Patent and Trademark Office. Upon completion of the reexamination proceedings, the stay was lifted in both actions on October 18, 2006.

During the reexamination proceedings, claims one through ten in the '998 Patent were cancelled by Plaintiff; claims 11, 20 and 21 were determined to be patentable as amended; claims 12, 13 and 22, which are dependent on an amended claim, were determined to be patentable; and the patentability of claims 14 through 19 was confirmed. An Ex Parte Reexamination Certificate was issued on September 19, 2006 for the '998 Patent. The patent Examiner was Jimmy Foster.

In addition to the reexamination proceedings, a continuation application number 10/606,039 was filed on June 25, 2003 (referred to herein as "'039 Continuation Application"), which is a related patent application to the '998 Patent. Examiner Blair Johnson, examined the '039 Continuation Application and he rejected all of the claims in this related patent application.

There are two patent claims at issue in this case: claim 14 and claim 21. Claim 14 provides as follows:

> A door comprising:
>     first and second spaced apart jambs, the jambs are connected at one end by a header and at the other end by a sill wherein each jamb carries an axially oriented insert track, and an axially oriented fabric track;
>     elongated, facing, weather stripping located in each fabric track wherein first and second portions of the weather stripping face one another;
>     a screen module coupled to the header, the screen module carries a retractable screen having a selected width and having a free end wherein the free end is attached

2

to an elongated feed assembly that extends at least across the width of the screen and which carries an elongated L-shaped connector element;

      an insert carried in and movable in the insert tracks wherein the insert is positionable at a plurality of locations along the jambs and wherein the connector element slidably engages an elongated section of the insert whereby as the insert moves toward the sill the screen is extracted from the module and edges of the screen and ends of the elongated feed assembly slide in the fabric tracks between facing weather stripping portions with the screen retracting into the module as the insert moves toward the header.

Claim 21, as modified in the reexamination proceedings, provides as follows:

A door comprising: first and second spaced apart jambs joined by a header and a sill to bound an internal region, each of the jambs carries an insert track and an adjacent generally U-shaped screen track, the insert tracks open toward one another, the screen tracks open toward one another, the screen tracks each carry elongated weather stripping at least some of which extends toward the adjacent insert track; a glass insert, slidable in the insert track toward and away from the header, the insert has an end, closest to the header, which extends between the jams with an elongated connection region formed on the end and the insert carries latches for engaging the jambs in a plurality of spaced apart locations; a screen module carried adjacent to the header wherein the module includes a biased roll of screen having a free end with the screen and the free end extending between the jambs and the weather stripping in the screen tracks, the free end carrying an elongated engagement member including an L-shaped member for slidably engaging the elongated connection region formed on the end of the insert such that as the insert moves toward the sill, the screen is extracted from the roll and slides in the screen track between weather stripping with part of the engagement member extending into the screen tracks, between the weather stripping, and as the insert is moved toward the header, the screen retracts into the module and wherein ends of the engagement member are located adjacent to at least part of the screen track, when the screen is fully retracted.

Although Plaintiff does not believe any of the terms in claims 14 & 21 require formal construction, it addresses the terms proposed by Defendants for claim construction. The following are the parties' proposed constructions:

| Term | Plaintiff's Construction | Defendants' Construction |
|---|---|---|
| "weather stripping" | a piece of material to assist in retaining the screen in the screen track | fibrous pile, brush or bristle material that fills and seals the gap between the walls of the screen track and the lateral edges of the screen fabric |

3

| | | |
|---|---|---|
| "between" weather stripping | in the space separating or intermediate | the screen fabric is extracted from the roll and slides in the screen track such that the screen fabric is in contact with fibrous pile, brush or bristle material so as to seal the gap between the walls of the screen track and the screen fabric and retain the edge of the screen fabric from lateral displacement out of the screen track |
| "adjacent insert track" | (none) | in a door with two lateral sides, a left and a right side, the screen track and insert track on the same side of the door are "adjacent" to each other and the insert track on the opposite side of the door from a screen track is non-adjacent |
| "slidably engaging" | to engage by sliding | (see below) |
| "L-shaped member" | a member shaped like the letter "L" | shaped like an L without regard to any particular type font style - i.e., with two linear members that are joined at one end at a 90 degree angle |
| "elongated engagement feature ... for slidably engaging the elongated connection region formed on the end of the insert" | (see above) | The "elongated engagement feature" slides into and thereby engages the "elongated connection region" by sliding in the direction of their respective elongations, i.e., lengthwise from one end to the other. In embodiments where the roll of screen is disposed horizontally adjacent the door header, the direction of the sliding is from side-to-side. |

4

| | | |
|---|---|---|
| "elongated weather stripping at least some of which <u>extends toward</u> the adjacent insert track" | (none) | *Defendants assert this claim is invalid as indefinite, but if the Court does not so find, they propose the following construction:* Looking at a vertical section of the door frame in cross-section, at least one of the opposing pieces of weather stripping that resides in the screen track has a discernible directional orientation that points toward the "adjacent insert track" [defined below] in the cross-sectional plane of the door frame. |

## DISCUSSION

The Federal Circuit issued a decision in 2005 that limited the use of *extrinsic* sources, such as dictionaries, treatises, encyclopedias and expert testimony, in claim construction. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed.Cir. 2005). The Federal Circuit explained that the focus in claim construction is toward *intrinsic* sources, which include the patent specification or written description, claim language and the patent's prosecution history. *See id.*

Claim construction presents a question of law for the court. *See Hockerson-Halberstadt, Inc. v. Avia Group Int'l, Inc.*, 222 F.3d 951, 954 (Fed.Cir. 2000). The claim construction analysis begins and ends with the words of the claim. *See Teleflex, Inc. v. Ficosa North America Corp.*, 299 F.3d 1313, 1324 (Fed.Cir. 2002). The scope of the right to exclude is defined by the claims. *See id.* The Federal Circuit held that, "claim terms take on their ordinary and accustomed meanings unless the patentee demonstrated an intent to deviate from the ordinary and accustomed meaning of a claim term by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.* at 1327. The ordinary meaning is to be determined from the view of a person of ordinary skill in the relevant art. *See id.* at 1325. In claim construction, "the court starts the decisionmaking process by reviewing the same resources as would that person, *viz.*, the patent specification and the prosecution

5

history." *Phillips*, 415 F.3d at 1313. The Federal Circuit recognizes the context in which a term is used in the asserted claim "can be highly instructive." *Id.* at 1314. The specification or written description "'is always highly relevant to the claim construction analysis. Usually, it is dispositive, it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir. 1996)).

Although less instructive than the specification, the court should also consult the patent's prosecution history for claim construction purposes. *See id.* at 1317. "The prosecution history, which [the Federal Circuit has] designated as part of the 'intrinsic evidence,' consists of the complete record of the proceedings before the [Patent and Trademark Office] and includes the prior art cited during the examination of the patent." *Id.*; *see Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed.Cir. 2005) ("The purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'") (quoting *ZMI Corp v. Cardiac Resuscitator Corp.*, 844 F.2d 1576, 1580 (Fed.Cir. 1988)).

In addition to the *intrinsic* sources, i.e., the specification, claim language and prosecution history, the Court may consult *extrinsic* sources, such as dictionaries, treatises, encyclopedias and expert testimony in claim construction. But such extrinsic sources must not be "used to contradict claim meaning that is unambiguous in light of the intrinsic evidence." *Phillips*, 415 F.3d at 1324. The concern with relying too heavily on dictionaries is that "the use of the dictionary may extend patent protection beyond what should properly be afforded by the inventor's patent." *Id.* at 1322. "[H]eavy reliance on the dictionary divorced from the intrinsic evidence risks transforming the meaning of the claim term to the artisan into the meaning of the term in the abstract, out of its particular context, which is the specification." *Id.* at 1321.

Two canons of claim construction are: "(a) one may not read a limitation into a claim from the written description, but (b) one may look to the written description to define a term already in a claim limitation, for a claim must be read in view of the specification of which it is a part." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998). Accordingly, a claim must include a term requiring a definition before a definition in the written description can be used to define a claim term. *See id.* But if the patent applicant elected to be a lexicographer by

6

providing an explicit definition of a claim term in the specification, that definition controls. *See id.* at 1249.

The parties brought samples of the doors at issue in this case to the *Markman* hearing. The Federal Circuit held that, "a trial court may consult the accused device for context that informs the claim construction process." *Serio-US Indus., Inc. v. Plastic Recovery Tech. Corp.*, 459 F.3d 1311, 1319 (Fed.Cir. 2006); *see Wilson Sporting Goods Co. v. Hillerich & Bradsby Co.*, 442 F.3d 1322, 1326-27 (Fed. Cir. 2006) (holding that "[w]hile a trial court should certainly not prejudge the ultimate infringement analysis by construing claims with an aim to include or exclude an accused product or process, knowledge of that product or process provides meaningful context for the first step of the infringement analysis, claim construction."). Although the Court examined the doors, the Court has been careful in the claim construction process not to be "influenced by the structure and function of the alleged infringing device." *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc. v. MEGA Sys., LLC*, 350 F.3d 1327, 1340 (Fed.Cir. 2003).

## A.  Weather stripping

Having reviewed the claim language, the specification and the prosecution history, the Court does not find that the term "weather stripping" is restricted to "fibrous pile, brush or bristle material." Thus, Defendants' proposed construction of this term, as set forth above, will be rejected. The Court will adopt the construction of "weather stripping" proposed by the Defendants in the *Larson v. AluminArt* case: a sealing material added to a fabric or screen track. The Court does not find the specification or prosecution history shows that weather stripping has been given a meaning in the '998 Patent different from the ordinary and accustomed meaning of the term weather stripping. In reaching the conclusion to adopt the *AluminArt* Defendants' proposed construction, the Court considered the definition of weather stripping in Webster's Third New International Dictionary (1981): "a strip of material to cover the joint of a door or window and the sill, casing, or threshold so as to exclude rain, snow, and cold air." The claims at issue in this case make clear that the weather stripping is added to the fabric or screen tracks: "elongated, facing, weather stripping *located in* each fabric track" (claim 14); "the screen tracks *carry* elongated weather stripping" (claim 21). The function of the weather stripping in the '998 Patent is to assist in retaining the screen in the screen track, but this proposed construction by Plaintiff does not include a description of what

7

the ordinary and accustomed meaning of the function of weather stripping is, i.e. to seal, and it does not include the notion that the weather stripping is added to the screen or fabric tracks.

**B.      "Between" weather stripping**

Defendants' proposed construction of "between" weather stripping is: the screen fabric is extracted from the roll and slides in the screen track such that the screen fabric is in contact with fibrous pile, brush or bristle material so as to seal the gap between the walls of the screen track and the screen fabric and retain the edge of the screen fabric from lateral displacement out of the screen track. Although Defendants contend the '998 Patent requires the screen to be "in contact with" the weather stripping, which will result in the sealing of the gap between the screen wall and the screen fabric, the Court does not find the word "between" requires construction in this case. Neither the claim language, the specification nor the prosecution history require that the screen fabric be in such close contact with the screen track so as to "seal" the gap between the two. The Court does not find it necessary to adopt Plaintiff's proposed construction, because the Court finds the word "between" is in its simplest form in the context of the '998 Patent.

**C.      "L-shaped"**

The Court does not find the claim language, specification or prosecution history limit the connector element or member to a part having only two members joined at a 90 degree angle, and therefore, rejects Defendants' proposed construction, which is: shaped like an L without regard to any particular type font style - i.e., with two linear members that are joined at one end at a 90 degree angle. The Court finds the term "L-shaped" is in its simplest form and that Plaintiff's proposed construction does not add any clarity to the term.

**D.      "Adjacent" insert track**

Defendants propose the following construction for the phrase "adjacent insert track": in a door with two lateral sides, a left and a right side, the screen track and insert track on the same side of the door are "adjacent" to each other and the insert track on the opposite side of the door from a screen track is non-adjacent. The Court finds that the term "adjacent" is in its simplest form and does not require construction.

### E.      "Extends toward"

Defendants contend the following phrase should be subjected to claim construction: elongated weather stripping at least some of which <u>extends toward</u> the adjacent insert track. Their proposed construction is: looking at a vertical section of the door frame in cross-section, at least one of the opposing pieces of weather stripping that resides in the screen track has a discernible directional orientation that points toward the adjacent insert track in the cross-sectional plane of the door frame. Defendants' proposed construction is a strained, narrow construction of the phrase "extends toward" that is not supported by the claim language, specification or prosecution history. The Court finds the phrase "extends toward" is in its simplest form and does not require claim construction.

### E.      Slidably engages (claim 14)/ slidably engaging (claim 21)

Both claims 14 and 21 refer to slidably engages or engaging in describing the connection between the L-shaped connector at the free end of the screen and the movable glass insert. Defendants' proposed construction is:

> [T]he "elongated engagement feature" slides into and thereby engages the "elongated connection region" by sliding in the direction of their respective elongations, i.e., lengthwise from one end to the other. In embodiments where the roll of screen is disposed horizontally adjacent the door header, the direction of the sliding is from side-to-side.

Plaintiff's proposed construction is: to engage by sliding. Defendants contend the Court should reject Plaintiff's proposed construction for "slidably engage" for at least four reasons: (1) Plaintiff's arguments based upon the prosecution history of the reexamination proceeding is refuted by Examiner Johnson in the '039 Continuation Application; (2) it is inconsistent with the teachings in the specification of the '998 Patent; (3) it relies heavily on extrinsic expert testimony that should be discounted by the Court; and (4) it is inconsistent with the doctrine of claim differentiation.

The Court does not find the prosecution history of the '998 Patent, including the reexamination, to be instructive regarding the construction that should be given to the term slidably engages or engaging in claims 14 and 21. The focus during the reexamination proceeding was on whether U.S. Patent No. 3,244,222 to Johnson ("the Johnson Patent") taught the edge frame

9

extended into the fabric track between facing weather stripping, not on how the free end of the screen was coupled to the window insert.

As to the specification, Defendants argue the claims are limited to coupling the free end of the screen to the window sash or insert in the manner depicted in Figures 8 and 9 of the '998 patent, i.e., sliding them together lengthwise in continuous contact until engaged as shown by the directional arrow in Figure 8 and as stated in Column 6 explaining Figures 8 and 11. They recognize the specification describes several alternate ways of coupling the free end of the screen to the window insert, but they argue that none of these alternates are described as being "slidably" engaged. Rather, they argue, the specification offers alternatives to slidable engagement, such as using a spline, clamps or adhesives to couple the screen insert to the window insert. Because none of these alternatives are defined as "slidably" engaging the screen insert to the window insert, Defendants argue none of these alternatives is included in the claim language at issue.

Plaintiff, however, contends that Figures 8 and 9 demonstrate how the screen module can be removed and replaced, not how the connecting member on the screen came to be engaged with the retaining feature on the window insert. Plaintiff contends these figures do not require that the screen insert be coupled to the window with a horizontal movement. As to Figures 11A-F, Plaintiff asserts the six different alternative connectors do not suggest any advantage to sliding in a particular direction. The last use of the term "slidably engage" in the written description is in the description of Figure 12, which is an alternate door that incorporates a screen module attached to the door as an accessory or add-on. In describing how the free end of the screen can be attached to the sash or window insert, the specification states "[a]ttachment can be effected by any of the previously discussed methods, including using a spline, adhesive, providing attachment clips which slidably engage a portion of the sash of the insert." ('998 Patent, Col. 7, ll. 6-13.) This reference to "slidably engage" does not require only lengthwise or lateral sliding.

The Court has reviewed the specification and prosecution history, including the reexamination proceedings, and does not find that the language in claim 14 of "slidably engages" or in claim 21 of "slidably engaging" is limited to "lengthwise" or "lateral" sliding. The Court recognizes the directional arrow in Figure 8 demonstrates a lengthwise or lateral sliding movement.

10

And, although the alternatives in the description of Figure 8 could be construed to be excluded from the meaning of "slidably" engaging, the later use of the phrase "slidably engage" in the specification to describe Figure 12 and in reference to using attachment clips does not restrict the word slidably to lengthwise or lateral sliding.

The Court has not relied on Plaintiff's expert's testimony, but the Court consulted the Webster's Third New International Dictionary (1981) for the definition of slidably, which is an adverb defined as "capable of sliding or being slid."

Defendants argue that under the doctrine of claim differentiation, Plaintiff has always intended that "slidably engages" should be limited to what is illustrated in Figure 8 of the '998 Patent. They assert that throughout the prosecution history Plaintiff started with a broad term in the independent claims, such as "coupled" or "removably coupled," to describe the connection between the free end of the screen and the window insert, and then included the narrowing limitation of "slidably engages" in the dependent claims to describe this connection.

Claim differentiation in its most specific sense, "refers to the presumption that an independent claim should not be construed as requiring a limitation added by a dependent claim." *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1380 (Fed.Cir. 2006) (citing *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC.*, 403 F.3d 1364, 1370 (Fed.Cir. 2005) ("[C]laim differentiation 'normally means that limitations stated in dependent claims are not to be read into the independent claim from which they depend.'")). In a more general sense, the Federal Circuit has characterized claim differentiation as the "'presumption that each claim in a patent has a different scope.'" *Id.* (quoting *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed.Cir. 2004)).

In this case, both of the independent claims at issue refer to "slidably" engages or engaging and there is no relevant limitation to that claim language added by a dependent claim. Thus, claim differentiation does not assist the Court in its most specific sense in construing the claims in the '998 Patent. Even if claim differentiation applies in this case in the more general sense, the Court does not find that the two independent claims at issue have a different scope regarding "slidably" engages or engaging. Neither of the claims require the sliding to be in any particular direction. Moreover,

11

as discussed above, the Court does not find that the specification or prosecution history restricts the term "slidably" to any specific direction in either claim 14 or 21.

For the reasons set forth above, the Court rejects Defendants' strained and narrow construction of the phrase slidably engages or engaging. The Court will adopt Plaintiff's construction of the term "slidably engages" (claim 14) and "slidably engaging" (claim 21), which is "to engage by sliding," because it adds clarity to the unusual term "slidably," and it is consistent with the claim language, specification and prosecution history, which do not restrict sliding to any specific direction. Accordingly,

IT IS ORDERED:

1. That the term "weather stripping" as used in claims 14 and 21 of the '998 Patent means: a sealing material added to a fabric or screen track.

2. That the phrase "slidably engages" in claim 14 and "slidably engaging" in claim 21 of the '998 Patent means: to engage by sliding.

3. That the terms "between," "L-shaped," "adjacent insert track," and "extends toward" do not require claim construction as used in claims 14 and 21 of the '998 Patent.

Dated this 20th day of March, 2007.

BY THE COURT:

/s/ Lawrence L. Piersol
Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
By: /s/ Jackie M. [illegible], Deputy
(SEAL)

12